# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

UNPUBLISHED
May 19, 2016

v

ANTWAN RAMOND RANKIN,

          Defendant-Appellant.

No. 325976
Wayne Circuit Court
LC No. 14-008301-FH

---

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant, Antwan Rankin, appeals as of right from his jury trial convictions for intimidating a witness by committing a crime or threatening to kill or injure, MCL 750.122(3), (7)(c); bribing, intimidating, or interfering with a witness (two counts), MCL 750.122(3), (7)(a); and obstruction of justice by contacting or threatening a witness, MCL 750.505. The trial court sentenced him as a second habitual offender, MCL 769.10, to concurrent terms of 88 to 240 months for each crime.[1] We affirm defendant's convictions but remand for further proceedings consistent with this opinion.

Defendant's convictions arose from his speaking with three prospective witnesses in a murder case against his older brother, Harvey Shonte Davis. Counts I and II involved witness "FM," while Count III dealt with conduct directed at minor "TT." Count IV, obstruction of justice, pertained to FM, TT, and "FB," who also a minor at the time of the alleged offenses. All three witnesses testified at defendant's trial.

## I. PROSECUTORIAL MISCONDUCT

On appeal, defendant first contends that the assistant prosecutor committed misconduct and deprived defendant of his due process right to a fair trial and right to confront the witnesses against him by making herself a witness against defendant. During closing argument, the

---

[1] Defendant's motion to remand was denied by this Court, but affidavits attached to the motion were added to the appellate record. *People v Rankin*, unpublished order of the Court of Appeals, issued August 27, 2015 (Docket No. 325976).

assistant prosecutor stated that when 17-year-old TT was on the stand, defendant had been making "trigger finger" gestures. At trial, no witness testified about seeing any trigger finger gestures.[2] Defense counsel did not object to the argument.

Allegations of prosecutorial misconduct are reviewed de novo to decide if the defendant was denied a fair and impartial trial. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003); *People v Rodriguez*, 251 Mich App 10, 29; 650 NW2d 96 (2002). Constitutional claims of denial of due process are likewise reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). Where the defendant fails to object, review is for plain error affecting the defendant's substantial rights. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

We examine the prosecutor's remarks in context. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Here, the remarks in question came after the prosecutor painted defendant as someone who engaged in self-serving behavior and who would do anything to manipulate a given situation. For instance, the prosecutor accurately summarized testimony concerning how defendant threatened the witnesses and recorded some of his conversations with the witnesses, but edited the recordings to remove some of his unfavorable statements. The prosecutor also summarized testimony about how defendant, while out on bond, attempted to cut his electronic tether and attempted to run from police officers. This, according to the prosecutor, showed that defendant attempted to maintain control and to do whatever he could to evade law enforcement and to help his brother do the same in the latter's murder trial. In this context, the prosecutor made the following argument:

> I'm in control. And then you saw him in the courtroom 17[-]year[-]old [TT] sitting on the stand in open court this man [defendant] fears nothing. *Open court rubbing his chin right in front of you, trigger finger, right in front of you as if no one is going to see that?*
>
> And no one is going to pay attention to what is going on. [TT] held his own. You got to give these people credit. [Emphasis added].

Although we agree that the "trigger finger" remark was improper based upon a lack of evidence of such conduct in the record, we do not find error requiring reversal. The remark was brief, and was, frankly, somewhat inarticulate. Furthermore, the court instructed the jury that the attorneys' statements and arguments were not evidence, and that the evidence came only from witnesses and exhibits admitted in court. It is presumed that the jury followed the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Further, we will not find plain error requiring reversal where a curative instruction could have alleviated any prejudice caused by the improper remarks. *People v Bennett*, 290 Mich App 465, 476; 802

---

[2] According to the presentence investigation report (PSIR), FM told the presentence investigator that defendant "was in the courtroom making trigger finger motions," but there is no evidence of such conduct in the trial court record.

NW2d 627 (2010). A timely request for a curative instruction could have cured any prejudice caused by the prosecutor's inappropriate remark. In the context of the entire trial, the prosecutor's one isolated remark was not so offensive as to deny defendant a fair trial.[3]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant maintains that he was denied the effective assistance of counsel by his attorney's failure to either excuse two allegedly biased jurors for cause or to exercise peremptory challenges to remove the prospective jurors.

Whether a defendant was denied the effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Constitutional issues and questions of law are reviewed de novo, while findings of fact are reviewed for clear error. *Id.* To prevail on a claim of ineffective assistance, a defendant must show that counsel's performance was defective, and that the deficient performance was prejudicial and deprived the defendant of a fair trial. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Lloyd*, 459 Mich 433, 446; 590 NW2d 738 (1999). In order to show that counsel's performance was defective, a defendant must overcome the strong presumption that counsel rendered adequate assistance. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). In this regard, we note that generally, potential jurors are judged on many criteria, some of which cannot be gleaned from the record. Jurors' facial expressions, body language, and nonverbal cues are very important to attorneys in deciding on peremptory challenges. "For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Unger*, 278 Mich App at 258. See also *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) ("an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight[.]") (citations omitted). Additionally, to show prejudice, a defendant must show that but for counsel's error, there is a reasonable likelihood that the result of the proceedings would have been different. *People v Shively*, 230 Mich App 626, 628, 584 NW2d 740 (1998).

Defendant's allegations pertain to two jurors. The first, juror 6, responded "Maybe" when the trial court asked if any of the jurors had been the victim of a crime or knew someone who had been a victim, and whether such experience might influence them. Upon further questioning by the court, juror 6 stated that his friend's grandson had been murdered. He then stated that this experience would "Probably not" affect him in this case, followed by a "Yes" in response to the court's inquiry "Why would it?" This prompted the following exchange with the trial court:

> THE COURT: You have to listen to the facts of this case and I will give you the law and you will go in the jury room to deliberate and arrive at a verdict.

---

[3] For similar reasons, we conclude that defendant is not entitled to relief on his attendant claim that trial counsel was ineffective for failing to object to the prosecutor's inappropriate remark.

JUROR NO. 6:  Yes.

THE COURT:  Based upon the law that you hear in this courtroom, can you do that?

JUROR NO. 6:  Yes.

Later, in response inquiries by defense counsel, juror 6 stated that a suspicion of guilt was not enough to convict, and indicated that the prosecutor would have to prove defendant's guilt beyond a reasonable doubt in order for juror 6 to vote to convict defendant.  Defense counsel did not excuse juror 6 for cause, nor did counsel exercise a peremptory challenge on the juror.  Juror 6 remained on the jury.

The second juror at issue was juror 14,[4] who indicated that she had previously been the victim of a robbery and had testified against the perpetrator in court.  In response to questioning by the prosecutor, the juror indicated that she felt "Bad" about the experience and was afraid "[b]ecause um a person that committed the crime was like he had threaten[ed] us and made us feel bad . . . ."  The juror indicated that she nevertheless testified and was "glad" that she did so.  On questioning by the attorneys and the trial court, the juror did not express any reservations about remaining impartial, nor did she indicate any confusion about the presumption of innocence or the burden of proof.  Defense counsel neither excused the juror for cause nor exercised a peremptory challenge, and the juror remained on the jury.

Upon our review of the record, defendant cannot overcome the presumption that trial counsel's performance was the product of sound trial strategy.  Although both prospective jurors made statements about past experiences that defendant takes issue with on appeal, neither indicated any confusion or reservations with the burden of proof or the presumption of innocence, and neither indicated that they would be unable to remain impartial.  Given this, defendant is unable to overcome the strong presumption that defense counsel's actions amounted to reasonable trial strategy.  See *Unger*, 278 Mich App at 258.  Accordingly, we defer to defense counsel's strategy in declining to seek the removal of either juror.

### III. SENTENCING

Defendant next argues that the trial court erred by scoring offense variables (OVs) 4, 9, and 10.  Defendant preserved his arguments as to OVs 4 and 10 by objecting at sentencing, and he contends that his trial counsel was ineffective for failing to object to the scoring of OV 9.[5]

---

[4] It appears there was a typographical error in the transcript when identifying the juror at issue; in one portion of the transcript she is identified as number 13, and in another portion of the transcript she is identified as juror 14.  Defendant provides the salient testimony in his brief, permitting us to address his issues of concern.

[5] We note that defendant only contests whether there was sufficient evidence to support the scoring of the offense variables.  He does not raise an argument about the use of judicial fact

Interpretation and application of the sentencing guidelines are legal questions subject to de novo review. *People v Huston*, 489 Mich 451, 457; 802 NW2d 261 (2011). The lower court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the facts, as found, are adequate to satisfy a particular score is a question of statutory interpretation that we review de novo. *Id*. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

## A. OV 4

Defendant first challenges the trial court's decision to score 10 points for OV 4. MCL 777.34(1)(a) directs the sentencing court to score 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" That the victim did not ultimately seek professional treatment is not determinative. MCL 777.34(2). See also See *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004).

There was ample evidence to support the trial court's decision to score OV 4. FM testified that she felt nervous after speaking with defendant, and she was shocked and surprised that defendant had found out her name. After defendant talked with her, she felt bullied and also felt uncomfortable walking outside. She took her 12-year-old son off the football team "because people thinking I'm a snitch and my son was scared and people saying stuff to him and I'm scared." FM told the presentence investigator that "I don't feel safe with him out on the street" and "this incident has caused me to be paranoid and also have bad dreams." On similar or less compelling facts, this Court has sustained findings of "serious psychological injury." In *Apgar*, 264 Mich App at 329, the victim "testified that she was fearful during the encounter with defendant." The Court found this sufficient and stated, "There is no requirement that the victim actually receive professional psychological treatment." *Id*. at 329. Similarly, in *People v Wilkens*, 267 Mich App 728, 741; 705 NW2d 728 (2005), the defendant's acts "caused the female victim anxiety, altered her demeanor, and caused her to withdraw[.]" FM's expressions of fear and anxiety supported a score of 10 points under OV 4.

## B. OV 9

Next, defendant claims that his trial counsel was ineffective for failing to object to the scoring of OV 9 at 10 points. The offense variable concerns the number of victims, and directs a sentencing court to score 10 points if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Defendant contends that none of his offenses involved multiple victims because each count of intimidation occurred in a separate transaction. See *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009); *People v Sargent*, 481

finding to mandatorily increase the guidelines minimum sentence range, as was at issue in our Supreme Court's decision in *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). As such, we limit our analysis to the issues raised and do not weigh in on the issue of whether judicially found facts increased defendant's minimum guidelines range.

Mich 346, 350; 750 NW2d 161 (2008). Hence, according to defendant, the intimidation offenses could not involve multiple victims.

We agree with defendant that the intimidation counts were separate transactions under *McGraw* and *Sargent*. However, we nevertheless find the trial court did not err in scoring OV 9 at 10 points. The sentencing offense in this case was the count pertaining to FM for intimidating a witness by committing a crime or threatening to injure or kill. FM testified that defendant told her that "if we wanted something done[,] we got people[,] something would have been done." To FM, this was a threat and meant she should not go to court or make any more statements, or else defendant had "people that could probably shut me up or something," i.e., people that "could hurt me or harm me." Defendant does not appear to contest that FM, whom he threatened, was a victim for purposes of OV 9. What defendant ignores is that, in addition to threatening FM, he also threatened, according to FM's testimony, her son and her family. A "victim" for purposes of OV 9, is "each person who was placed in danger of physical injury or loss of life or property . . . ." MCL 777.39(2)(a). Just as FM was placed in danger of physical injury or loss of life, so too were her son and her family. This Court has sustained the scoring of OV 9 based on threats. See *Wilkens*, 267 Mich App at 741. Based on the threats to FM's son and family, we find the trial court's scoring of OV 9 was appropriate.

C.  OV 10

The trial court scored OV 10 at 15 points. A sentencing court is to score OV 10, entitled "Exploitation of a Victim's Vulnerability," at 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is an offender's "pre-offense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In *Huston*, 489 Mich at 454, the Court held that to be labeled predatory conduct under OV 10, pre-offense conduct only has to be directed at "a victim," not necessarily a specific victim. MCL 740.40(3)(a). "Predatory conduct," the Court held, "does not encompass *any* 'preoffense conduct,' but rather only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to affect a crime or subsequent escape without detection.' " *Huston*, 489 Mich at 463, quoting *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).

We find that a preponderance of the evidence supported the trial court's scoring decision as to predatory conduct and that defendant's preoffense conduct in this case was more than mere run-of-the-mill planning. The record reveals that with regard to the sentencing offense of threatening/intimidating FM, defendant, who did not previously know FM, discovered her identity, located her residence, and left her a message indicating she was to call him. Defendant also appears to have performed some investigation into FM's personal life in order to give his threats more sting, as FM testified that defendant knew she had a son and he made threats against FM, her son, and her family. Although the issue presents a close call, we find that defendant's preoffense investigation into FM and her personal life is evidence of predatory conduct. Specifically, defendant's effort to learn pertinent details about FM in an apparent attempt to make his threats more effective went beyond normal preoffense planning and was directed at FM for the purpose of victimization. See *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906

(2013) (finding that the defendant's investigation of the victim and her place of employment was evidence of predatory conduct).

## D. CHALLENGE TO THE ACCURACY OF THE SENTENCING INFORMATION

Defendant's final issue, which also deals with sentencing, requires a remand. At defendant's sentencing, the trial court mentioned, in assessing defendant's rehabilitative potential, that two of his brothers, Roland and Ezekiel Davis, had been to prison. Defense counsel, at defendant's behest, objected, stating that neither Roland nor Ezekiel had been to prison. The trial court disagreed, reading a line from the PSIR indicating that both Roland and Ezekiel had MDOC numbers. At this point, defendant interjected, saying that neither brother had been to prison and that, as far as he knew, only one of the brothers had ever been to jail, and it was in regard to child support. This prompted the following exchange between defendant and the trial court:

> THE COURT: Never been to jail? You want me to stop this and check it out?
>
> [DEFENDANT]: I mean, you can.
>
> THE COURT: Well, it will affect your sentencing.

It appears there was a 27-minute break in the hearing during which time the trial court attempted to find more information on defendant's brothers. The sentencing hearing resumed with the court announcing that:

> We've had to use additional time for the defendant just like we had to use additional resources to get these witnesses here.
>
> Just wasting time. The record shows defendant [sic] Roland is on probation he was found guilty of [sic] a bench trial. Anymore information[?]

Defendant continued to protest, stating that neither brother had been to prison. When counsel reiterated defendant's position, the trial court interjected, stating "[w]e went past that. It says he[6] was charged with assault with intent to murder and aggravated assault. And he was charged with carrying a concealed weapon." Defense counsel stated that charges did not equate to a conviction. The trial court responded by stating that there was an order of probation, and chastised defense counsel and defendant for arguing that an order of probation did not necessarily entail a prison term. In particular, with regard to defendant, the trial court stated:

> Look, look, my point is that you got to be honest. And you are not. You are not honest with this Court right then and there we spent all of this time to verify this.

---

[6] It is unclear from the record which brother "he" was.

* * *

　　. . . My point is you don't say nothing [sic] you don't know, don't say it. This is very important. This is your life. This is your sentencing. You [sic] going to misrepresent the Court you just did. I don't want to hear it.

　　But I'm not going to hold it against you because at this point if you are going to be rehabilitated you are going to be rehabilitated without any reflection of what you just said. But don't say anything that you don't know about. You could have just as easily have said I don't know.

　　"It is well settled that the use of inaccurate information at sentencing may violate defendant's constitutional right to due process." *People v Hoyt*, 185 Mich App 531; 462 NW2d 793 (1990). Pursuant to MCR 6.425(E)(1)(b), the court must "give each party an opportunity to explain or challenge the accuracy or relevancy of, any information in the presentence report, and resolve any challenges in accordance with the procedure set forth in subrule (E)(2)." Pursuant to MCR 6.425(E)(2), the court must "make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing." If the Court accepts defendant's version or states that it will not rely on the information at sentencing, it must order the probation officer to correct or delete the challenged information. MCR 6.425(E)(2). And, if the court chooses to disregard the information at sentencing, "it must clearly indicate that it did not consider the alleged inaccuracy in determining the sentence." *People v Spanke*, 254 Mich App 642, 649; 658 NW2d 504 (2003). "We review the sentencing court's response to a claim of inaccuracies in defendant's PSIR for an abuse of discretion." *Id* at 648.

　　In the instant case, it does not appear that the PSIR is necessarily inaccurate; rather, it appears that the trial court extrapolated from the PSIR's listing of MDOC numbers for two of defendant's brothers a conclusion that those brothers had served time in prison. Defendant vehemently took issue with the court's factual understanding as gleaned from the PSIR. On the record before us, we find the trial court failed to adequately resolve defendant's challenge to the trial court's factual understanding based on the PSIR. The court attempted to resolve the challenge, then appeared to become frustrated at defendant and chastised him for pursuing the matter further, despite the fact that the court's investigation did not provide a definitive answer on whether defendant's brothers had in fact been in prison.[7] Although the trial court later stated that it was not "going to hold it against" defendant, the court earlier told defendant, plainly, "it will affect your sentencing." The court also chastised defendant for lying and not being honest about whether his brothers had been to prison, despite never definitively verifying the accuracy of its factual understanding. The court's conclusion that defendant was not being honest is inconsistent with the notion that the court declined to consider the challenged information.

---

[7] We note that defendant provided affidavits to this Court in which his brothers denied that they had ever been to prison. The MDOC's offender tracking information system website also appears to corroborate defendant's position.

Given the court's failure to adequately resolve defendant's challenge to the accuracy of the court's factual understanding and a lack of clarity as to whether it affected defendant's sentence, we remand for proper consideration of defendant's challenge. On this point, we find this Court's recent decision and remand instructions in *People v Maben*, __ Mich App __; __ NW2d __ (2015) (Docket No. 321732), slip op at 5, to be pertinent:

> Because the trial court failed to adequately resolve [the defendant's] challenges, we remand this case for proper consideration of his challenges. It is unclear to what extent the trial court may have relied on the challenged information in sentencing. Therefore, on remand, the trial court shall resolve [the defendant's] challenges in accord with MCR 6.425(E) and MCL 771.14(6), and also clarify whether any information found to be inaccurate or irrelevant affected the trial court's sentencing decision. If it is determined that information found to be inaccurate or irrelevant played a role in the trial court's sentencing decision, the trial court shall resentence him. Otherwise, the trial court need only make such changes to the PSIR that it deems in its discretion to be warranted.

## IV. CONCLUSION

Affirmed, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering