# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRELL LEONARD SMITH,

Defendant-Appellant.

UNPUBLISHED
October 6, 2016

No. 327575
Oakland Circuit Court
LC No. 2011-236671-FH

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, after a jury trial, of possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of marijuana, MCL 333.7403(2)(d). The trial court sentenced defendant to 51 months to 20 years for possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, one to four years for possession of less than 25 grams of cocaine, two years for each count of felony-firearm, and 37 days for possession of marijuana. We affirm.

This case arises from a traffic stop that occurred on September 6, 2010. Defendant was the passenger in the car stopped by police, was searched by the police after admitting he was armed, and arrested after the police discovered cocaine in his pants. The police then searched the home listed on defendant's driver's license, where they discovered more cocaine, marijuana, and several more firearms.

## I. JUDICIAL BIAS

Defendant first argues that the trial judge violated his right to a fair trial when the judge created the appearance of partiality by mocking, criticizing, and shouting at defense counsel during trial. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Judicial bias is a structural error, and thus, if a reviewing court concludes that judicial misconduct has denied the defendant a fair trial, automatic reversal is required. *Id*.

-1-

The United States and Michigan Constitutions guarantee a defendant the right to a fair and impartial trial. See US Const, Am VI; Const 1963, art 1, § 20. A trial judge's conduct can deprive a defendant of a fair trial if that conduct pierces the veil of judicial impartiality. *Stevens*, 498 Mich at 164. However, the defendant must overcome a heavy presumption that the trial judge was impartial. *People v Biddles*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326140); slip op at 2. In *Stevens*, 498 Mich at 164, our Supreme Court clarified the proper analysis under which a claim of judicial misconduct should be reviewed, stating:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.

A fact-specific inquiry is required, and "the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors" within the totality of the circumstances "to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole." *Id*. at 171-172. The *Stevens* Court directed that this inquiry focus on:

> a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

However, the party challenging the court's conduct need not "establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury." *Id*. Further, "[a] trial court has wide, but not unlimited, discretion and power in the matter of trial conduct," *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995), but judicial misconduct includes the belittling of counsel, *Stevens*, 498 Mich at 172-173.

In *Biddles*, the defendant raised several challenges to the trial judge's conduct, which included the trial judge's interruptions and frustration with the defense counsel during the defense counsel's questioning of a witness. *Biddles*, ___ Mich App at ___; slip op at 2-3. This Court concluded that the defense counsel's conduct in talking back to the trial judge and ignoring the judge's admonishment to rephrase questions and move on with the questioning caused the trial judge to repeatedly interrupt the defense counsel's questioning of a witness. *Id*. at ___; slip op at 3. The defendant also challenged an exchange between his attorney and the trial judge. *Id*. at ___; slip op at 3-4. This Court noted that the defense counsel gave an "improper and disrespectful response" to the trial judge's ruling with regard to defense counsel's line of questioning, and concluded that "considering the totality of the circumstances, the trial judge's 'interruptions' and remarks were reasonably measured given defense counsel's questions and were focused on enforcing the rules of evidence." *Id*. at ___; slip op at 4. This Court also pointed out that the trial judge did not interject more during the defense's questioning of the witnesses than during the prosecution's questioning of witnesses, and the trial judge instructed

the jury that the judge's comments and rulings were not evidence, the judge was not trying to influence the jury verdict or express a personal opinion about the case in making comments or rulings, and the jurors should disregard any opinion that they believed the court had. *Id*. at ___; slip op at 4.

During trial, defendant's attorney, Marvin Barnett, objected numerous times and argued extensively with the trial judge. During voir dire, Barnett argued with the judge. At trial, Barnett's frequent objections and arguments continued. During his objections and arguments, Barnett interrupted the trial judge several times, and spoke to her, the prosecutor, and the witnesses in a sarcastic or uncourteous manner on several occasions.

The trial judge generally responded to Barnett in a civil fashion and provided Barnett with other courtesies, such as giving Barnett leeway when he misplaced his file and wanted another copy of documents provided to him during discovery, halting the proceedings to call the gun board twice in order to satisfy Barnett's objection to the evidence regarding defendant's suspended concealed pistol license, and giving Barnett 20 minutes to review materials. However, Barnett eventually antagonized the trial judge into expressing her frustrations with his behavior. On various occasions, the judge asked Barnett to "sit down and allow [her] to proceed," stated that she was "not sure if [Barnett was] not listening," told Barnett that "it works a lot better if you let me speak instead of speaking over the top of me," stated that "[t]his is going to be a long day" in response to one of Barnett's objections, and told Barnett that prosecution exhibits he objected to "don't magically become different pieces of evidence" when Barnett attempted to admit them during cross-examination.

While many of these comments and interactions took place in front of the jury, the jury was taken out of the courtroom on several occasions so that the trial judge could speak to Barnett about his conduct. Out of the presence of the jury, the trial judge told Barnett that "by continuing to argue over the top of me when I am making rulings, it does give the impression that there's a lot of discord here, and I don't think that's appropriate," and that Barnett was "making it difficult for [her] to do the job that [she] do[es] have, and that is to rule on the law in this case." The judge further stated later in the trial, when the jury was not present:

> [Y]ou are not acting appropriately in my courtroom, and I'm going to ask you to stop baiting arguments, to stop acting histrionically, and to let this trial proceed. You have got to stop and get control of your behavior. You know what? You can ask questions, you can get answers. What I don't want you doing is screaming at me or screaming at the jury, and I'm just telling you right now, you continue to do it, and I'm going to hold you in contempt. I'm done. I've been doing this for two days now trying to hold my tongue. I'm done. The next time you go off on me or a witness, I'm finding you in contempt.

In response, Barnett asked the court if he could make a record regarding her statements, the trial judge did not permit him to do so, but acknowledged that she was "screaming" at Barnett.

Out of the presence of the jury, Barnett also expressed frustrations regarding his interactions with the judge and stated:

I don't know if you notice it, but you are – your tone of voice is condescending to me. You've been yelling at me. And you don't assume that I'm going to do what [the prosecutor's] doing in accordance with the rules. You're attacking me in front of this jury. Not one time do you allow me to respond to your objections. It's like I don't have anything to say. I asked you may I respond to an objection. Now, if you don't want me to respond to objections, say so, but your appearance is clearly in her favor and you're not letting me speak and you're attacking me and you're yelling at me.

This discord between Barnett and the trial judge came to a head when Barnett told the judge, outside the presence of the jury, that

[y]ou are screaming at me. You are frowning. You are at the top of your voice, you are yelling at me, Your Honor. I understand you might be frustrated, but I believe that those civility principles apply to you as well. And I'm sorry, I apologize to the Court, but I will not be yelled at again. I've told my client this. I don't have to take that. You don't have to yell at me. I won't tolerate it. It's inappropriate.

. . . I don't have a problem with your objection, but your yelling and screaming at me cannot be tolerated, and therefore – and you've already admitted that you're yelling and screaming, and therefore since the Court will continue to do that, I am fearful that you may hold me in contempt. I don't think you have a right to yell and scream, and therefore, I've advised my client I can no longer fulfill my Sixth Amendment responsibility, because I don't plan on going to jail. For the remainder of this trial, I will have nothing else to say to you. I cannot be intimidated. I apologize for whatever conduct I have; I've got nothing else to say.

The court responded:

Counsel, nor can I be intimidated. . . . I was forced to raise my voice to get your attention, because you continue to talk over me, you continue to act in a manner that has nothing to do with justice and the search for truth, and to get this case resolved. You – I've told you that when you have an objection, you need to state your legal reasoning for it, when I asked you for your legal reasoning for it, you continued to talk over the top of me. I raised my voice once. Thank goodness we have a video/audio record of this. And you can do whatever you want with that video/audio record. And if you choose at this point to stop representing your client, then you will also face the consequences of that. I think I've made it very clear that we will proceed in an orderly manner, and that that [sic] will include you stating your objections and your basis for your objections, and not yelling at the Court or talking over the Court.

While the jury witnessed some of the arguments between the judge and Barnett, before the trial began the judge instructed the jury that she did not "want [the jury] to be influenced by somebody else's opinion," that "the statements of the attorneys . . . are not evidence," that "[n]othing [the judge] say[s] is meant to reflect [her] own opinion about the facts of the case,"

-4-

that while the judge may ask the witnesses questions, her questions are not intended to reflect her opinion about the evidence.

Additionally, in his closing argument Barnett stated that "things get pretty hot, and things get, you know, very involved and emotional" during trial, but asked the jurors to "remember the instructions and do not allow [yourselves] to be impacted in any way by the attorneys." Barnett also acknowledged that he is "a wild and crazy guy" and stated that because he is a lawyer he gets to "argue with the judge." However, Barnett stated that the arguments were not personal and asked the jury not to let his discussions with the judge affect the verdict. During her rebuttal argument, the prosecutor agreed and stated that while the jurors may not agree with the way defense counsel presented his case, the jury should not let it affect the verdict. She added that the "tones of voices" used by the attorneys during trial should not impact the jury verdict. Last, before they deliberated, the judge again instructed the jurors that they "must not let sympathy or prejudice influence [their] decision," that "lawyers' statements and arguments are not evidence," that her "comments, rulings, questions, and instructions also are not evidence, that she was "not trying to influence [their] vote or express a personal opinion about the case," and that if the jurors believed that the trial court had an opinion on the case, the jurors should disregard that opinion.

Thus, an examination of the record does not support defendant's contention that the trial court's comments and conduct deprived him of his right to a fair and impartial trial. First, defendant asserts that the nature of the judicial conduct that deprived him of a fair trial was the trial judge "criticizing, making fun of, and raising her voice repeatedly" toward defense counsel. However, the record does not demonstrate that the trial judge ever made fun of Barnett. While the trial judge did raise her voice and rebuke Barnett on several occasions, it was in response to his disruptive and, at times, uncivil behavior and was done mostly outside the presence of the jury. Moreover, it is the court's responsibility to control the trial proceedings, see MCL 768.29,[1] and the court's comments and behavior did not convey any views concerning the weight or strength of Barnett's theories of defense or arguments, but rather, focused on reforming Barnett's disruptive behavior.

Second, while the audio and video recordings of the trial were not provided on appeal, those occasions in which the judge acknowledged that she raised her voice at Barnett were done outside the presence of the jury and only the court's tone and demeanor "displayed in front of the jury" should be considered. See *Stevens*, 498 Mich at 174. While it does not appear that the trial judge raised her voice at Barnett in the presence of the jury, the trial judge did make several comments that expressed her impatience and frustration with Barnett's behavior. However, again, the court's comments, tone and demeanor did not convey disbelief in Barnett's theory of

---

[1] MCL 768.29 provides, in part, "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

defense or express advocacy on the prosecution's behalf, but rather, focused on reforming Barnett's disruptive behavior.

Third, the scope of judicial intervention within the context of the length and complexity of the trial also does not weigh in defendant's favor. Defendant's trial lasted three days and involved legal issues that were not very complex. The interruptions caused by Barnett's objections and arguments, and by the trial court's response to those instances, caused significant delay and distraction during the trial. However, the trial judge did not inappropriately and independently impose those interruptions on Barnett during the trial, but instead, reluctantly responded to inappropriate behavior displayed by Barnett.

Fourth, the trial judge's comments were directed almost exclusively at Barnett in response to Barnett's disruptive behavior. The trial judge demonstrated that her comments were made in response to specific inappropriate behavior, rather than a specific party, when she rebuked the prosecutor for making an objection without citing authority. Last, the trial judge provided several curative instructions when she informed the jury, twice, that her comments and ruling were not intended to convey an opinion. Further, both parties emphasized these instructions to the jury during their closing arguments.

In sum, this is not a case in which the trial judge exceeded the proper scope of judicial questioning, exhibited " 'rather more emotion on the part of the trial judge than the records seem to warrant,' " *Stevens*, 498 Mich at 176 (citation omitted), or insinuated a disbelief in a theory or defense. Instead, in an attempt to control the proceedings, the trial judge rebuked Barnett on numerous occasions in front of the jury. However, the judge's comments were made in direct response to Barnett's repeated disruptive and uncivil behavior, did not did not convey any opinion concerning the weight or strength of Barnett's theories of defense, and did not give the appearance of advocacy in the prosecution's favor. While the interruptions prolonged the trial and were most likely distracting for the jury, and although the judge's comments were directed almost exclusively at Barnett, the judge was forced to intervene in the proceedings to control Barnett's behavior, and she provided the necessary curative instructions to the jury. Accordingly, it is not reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against Barnett.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also asserts that defense counsel was ineffective when he (1) failed to file a pretrial motion to suppress the firearms and drugs that were discovered during the traffic stop and subsequent search of defendant's home, (2) lacked a reasonable trial strategy, and (3) "repeatedly incited antagonism between himself and the judge." We disagree.

A defendant preserves the issue of ineffective assistance of counsel by filing a motion for a new trial or a *Ginther*[2] hearing in the trial court. See *People v Lopez*, 305 Mich App 686, 693;

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-6-

854 NW2d 205 (2014). In this case, defendant did not move for a new trial or request a *Ginther* hearing, and as a result, this issue is not preserved. See *id*.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, the trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*. Unpreserved claims of ineffective assistance of counsel can still be reviewed, but review is limited to errors apparent in the record below. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI; Const 1963, art 1, § 20. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation omitted).

## A. MOTION TO SUPPRESS

First, defendant argues that defense counsel's performance fell below an objective standard of reasonableness when he failed to file a motion to suppress evidence. We disagree.

Failing to file a suppression motion is not per se ineffective assistance; instead a defendant must still demonstrate that counsel's performance was objectively unreasonable. See *People v Wilkens*, 267 Mich App 728, 735-736; 705 NW2d 728 (2005). Where trial counsel's failure to litigate a Fourth Amendment claim is the basis of an ineffectiveness challenge, a defendant must prove "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v Morrison*, 477 US 365, 375; 106 S Ct 2574; 91 L Ed 2d 305 (1986). Additionally, counsel is not required to advocate a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

The Fourth Amendment to the United States Constitution and the parallel provision of the Michigan Constitution guarantee the right to be free of unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. There is no guarantee against all searches and seizures, only unreasonable ones. *United States v Sharpe*, 470 US 675, 682; 105 S Ct 1568; 84 L Ed 2d 605 (1985). A traffic stop is permissible if the police officer has probable cause to believe that a traffic violation occurred. *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996).

In this case, the traffic stop was executed after Officer Michael Zang determined that the license plate of the Honda was improper because it was not registered to the car. MCL 257.255(1) provides, in part:

-7-

Except as otherwise provided in this chapter, a person shall not operate, nor shall an owner knowingly permit to be operated, upon any highway, a vehicle required to be registered under this act unless there is attached to and displayed on the vehicle, as required by this chapter, a valid registration plate issued for the vehicle by the department for the current registration year.

Accordingly, the initial traffic stop was justified as there was probable cause to believe a traffic violation occurred. Defendant seems to concede that the traffic stop was valid. However, defendant argues that his detention and pat down following the driver's arrest, when he "was merely a passenger in the car and had no connection whatsoever with the improper plate that created the legal basis for the traffic stop," violated his Fourth Amendment rights.

Thus, the first issue is whether the detention of defendant after the driver's arrest was invalid under the Fourth Amendment. "[T]he test for what constitutes a seizure is whether, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *People v Corr*, 287 Mich App 499, 506; 788 NW2d 860 (2010) (citation omitted). Whether defendant's continued detention after the driver had been arrested was lawful "depends on its reasonableness," and "reasonableness requires a fact-specific inquiry that is measured by examining the totality of the circumstances." *Id*.

"Stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment, even if the purpose of the stop is limited and the resulting detention is brief." *People v Williams*, 236 Mich App 610, 612 n 1; 601 NW2d 138 (1999). Further, " '[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop,' which normally 'ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave.' " *Corr*, 287 Mich App at 507 (citation omitted; alteration in original). Thus, defendant's detention during the traffic stop was reasonable, and his detention in the car until after the driver was arrested continued to be reasonable.

When the driver was placed in the back of Officer Zang's patrol car, Officer Michael Gorbe immediately made contact with defendant and asked him to get out of the Honda so that the police could impound the vehicle. While defendant asserts that at that point "the officers decided to unconditionally detain [defendant] for further questioning and searching of his person," there is nothing in the record to suggest that the officers intended to question or detain defendant past this point. Instead, testimony at trial established that defendant, after Officer Gorbe asked him to exit the car, told the Officer Gorbe that he was armed. At that point, the police properly detained defendant while they secured the weapon as they reasonably feared, based on defendant's statements, that defendant was armed and that the officers' safety could be in jeopardy. See *People v Custer*, 465 Mich 319, 328; 630 NW2d 870 (2001) (opinion by MARKMAN, J.). Accordingly, while the second detention of defendant falls outside what initially justified the traffic stop, the brief detention of defendant in this case was valid under the Fourth Amendment.

The next issue is whether the pat down search of defendant was invalid under the Fourth Amendment. Defendant consented to Officer Zang's request to pat him down, and the pat down yielded the cocaine. Consent is an exception to the search warrant requirement, *People v*

*Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005), and defendant does not claim that his consent was involuntarily given. Accordingly, the pat down search of defendant was also valid under the Fourth Amendment.

In sum, the officers conducted a valid traffic stop. Further, the initial and subsequent detention of defendant was reasonable, and therefore valid, under the Fourth Amendment. Because defendant consented to the pat down that yielded the cocaine, the pat down search of defendant was also valid under the Fourth Amendment. Last, because the detention and search of defendant during the traffic stop were lawful, the subsequent search of his home pursuant to a search warrant was also legal. See *Wilkens*, 267 Mich App at 731-734 (finding that the exclusionary rule did not apply to evidence seized during a lawful warrantless search, and thus, did not apply to evidence subsequently seized pursuant to a warrant obtained as a result of that lawful search). Thus, any claim that defendant's Fourth Amendment rights were violated in a motion to suppress could not have succeeded. Because counsel is not required to argue meritless positions, defense counsel's failure to move for suppression of the evidence on that basis did not fall below an objective standard of reasonableness, and defendant was not denied the effective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

## B. LACK OF TRIAL STRATEGY

Defendant argues that defense counsel's performance fell below an objective standard of reasonableness when he failed to form a coherent trial strategy. We disagree.

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel's competence is not to be assessed with the benefit of hindsight. *People v Hill*, 257 Mich App 126, 139; 667 NW2d 78 (2003).

Defendant incorrectly asserts that defense counsel failed to present a "reasonable" strategy at trial. Defense counsel advanced a defense premised on the police officers' alleged lack of credibility and lack of corroborating evidence, and cross-examined the police officers in an attempt to undermine their testimony relating to their version of events during the traffic stop. The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). Thus, there is no basis for concluding that defense counsel was ineffective for failing to pursue a different defense.

## C. DISRUPTIVE BEHAVIOR

Defendant argues that defense counsel's performance fell below an objective standard of reasonableness when he "repeatedly incited antagonism between himself and the judge," which "gave the appearance of judicial bias" and prejudiced defendant. We disagree.

As discussed above, defense counsel's behavior during trial was often disruptive, uncivil, and inappropriate. It prolonged the trial, caused significant distraction, and did not seem intended to aid the in the defense in any manner. However, even assuming without deciding that defense counsel's performance fell below an objective standard of reasonableness when he "repeatedly incited antagonism between himself and the judge," defendant has not demonstrated the requisite prejudice necessary to establish a claim of ineffective assistance of counsel.

At trial, two police officers testified consistently that during the traffic stop defendant stated that he had a firearm, consented to a pat down search, and that drugs were recovered from his pants. Further, several police officers testified regarding the search of defendant's home and indicated that adult male clothing was found in the home, with proof of residency establishing that defendant lived in the home in which cocaine, marijuana, and four more firearms were found. Thus, in light of this overwhelming evidence of defendant's guilt, there is no reasonable probability that, but for trial counsel's disruptive behavior during trial, the result of the trial would have been different. See *People v Ramsdell*, 230 Mich App 386, 407; 585 NW2d 1 (1998) (finding that "[i]n light of the overwhelming evidence of [the defendant's] guilt," there is no reasonable probability that, but for any "unprofessional errors by counsel, the result of a proceeding would have been different.").

Affirmed.


/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly