# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 9, 2018

Plaintiff-Appellee,

v

No. 333841
Wayne Circuit Court

LONNIE TODD BARNES,

LC No. 16-001044-01-FC

Defendant-Appellant.

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c), and kidnapping, MCL 750.349, based on his sexual assault of PD. The jury also convicted defendant of CSC-III, MCL 750.520d(1)(b), but the trial court vacated that conviction on double-jeopardy grounds at the request of the prosecutor. The court sentenced defendant as a fourth-offense habitual offender to 42 to 80 years' imprisonment for each conviction. We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

One evening in May 2013, PD decided to search the Internet for social meet-up sites as she had recently moved to Detroit and had no local friends. She discovered a telephone "hotline," which she called and then connected with defendant. PD agreed to meet defendant in person because he promised to take her sightseeing. Defendant instead drove PD to a secluded location and propositioned her for sex. When PD declined, defendant sexually assaulted her by forcibly penetrating her both vaginally and anally. Defendant conceded that he *did* have sex with PD (this was conclusively established by DNA evidence), but claimed it was consensual. Because defendant elected not to testify at trial, PD's was the sole account of the evening's events heard by the jury. The prosecution also presented the testimony of another woman, SG, who described a similar attack perpetrated upon her by defendant.

-1-

## II. ASSISTANCE OF COUNSEL

Defendant challenges defense counsel's performance on several grounds, both in a brief filed by appointed appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Defendant did not seek a new trial or a *Ginther*[1] hearing below. A motion panel denied defendant's remand request, *People v Barnes*, unpublished order of the Court of Appeals, entered March 31, 2017 (Docket No. 333841), and we similarly discern no ground to grant that relief. Accordingly, our review is limited to mistakes apparent on the existing record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).[2]

"Whether defense counsel performed ineffectively is a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 777 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solomonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice element, the defendant must demonstrate a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented sound trial strategy." *Strickland*, 466 US at 689. And the "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel was defective in "coercing" him into not testifying. Defendant's claim of error is fatally flawed because he has presented no record evidence of the advice his counsel provided. The sole record evidence on this point is defendant's waiver of his right testify at the trial. Defendant avowed that it was his own decision not to testify and that he made the decision voluntarily, of his own free will, and without any coercive threats or promises. Because this Court's review is limited to errors apparent on the record, defendant's bald allegations about the advice provided by counsel do not suffice. Without any evidence of what advice counsel provided, and why, there is no basis for concluding that counsel provided *bad* advice. In light of the myriad strategic implications that might arise

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] We also note that defendant has improperly expanded the record on appeal. We have not considered any documents presented to this Court that were not first presented below. See *People v Gingrich*, 307 Mich App 656, 659; 862 NW2d 432 (2014).

when a defendant chooses to testify, and counsel's ethical duty not to suborn perjury, it might very well have been prudent to advise defendant not to testify. Accordingly, defendant has not rebutted the strong presumption that his counsel's advice was both strategic and effective.

Defendant argues that counsel should have objected to the introduction of out-of-court statements made by PD and SG during their rape-kit examinations, further arguing that such statements constituted inadmissible hearsay. "[C]ounsel cannot be considered ineffective for failing to raise a futile objection." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). Assuming that the statements in question were hearsay, they were nevertheless admissible under the hearsay exception set forth by MRE 803(4), pertaining to statements necessary for medical treatment or diagnosis. See *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). Accordingly, any objection would have been unfounded.

Defendant posits that defense counsel inadequately impeached inconsistencies and implausibilities in the testimony given by SG and PD. Defendant has failed to rebut the strong presumption that counsel's performance in this regard was both strategic and effective. As defendant's discussion regarding the *adequacy* of the impeachment method tacitly recognizes, counsel actually did cross-examine SG and PD about such matters; he simply did not press the attack to the level defendant might have preferred. When defending against a CSC charge, however, defense counsel must strike a delicate balance. Although counsel must zealously advocate for the defendant, an overly zealous cross-examination of a tearful victim may achieve the opposite result, enraging or alienating the jury. Counsel might have thought that by ingratiating himself with SG and PD, by building trust and a solid rapport, he was more likely to elicit favorable testimony. After a thorough review of the record evidence, we are satisfied that defense counsel struck an appropriate balance.

Finally, defendant argues that his counsel failed to adequately investigate and pursue defense theories. Specifically, defendant contends that through a "basic" investigation, counsel would have learned that SG and PD were both drug-addicted prostitutes who solicited customers online, and that one of the minivans registered to defendant's address was impounded at the time PD was sexually assaulted, so he could not have used it on the night in question. Because defendant has failed to present any record evidence to establish the truth of these allegations, and he has also failed to present any evidence regarding what investigatory steps counsel *did* take, defendant's claim of error necessarily fails. Without such evidence, there is no basis for concluding that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.

### III. VICTIM'S METHOD OF APPROACHING THE WITNESS STAND

Defendant contends that the trial court violated his right to due process by allowing PD to avoid passing the defense table and to approach the witness stand by walking behind the bench. He also insists that defense counsel should have objected when the court permitted PD to approach the stand in this manner in front of the jury. We agree that counsel should have objected to this procedure and at least requested that PD be seated on the witness stand during a jury recess. However, as defense counsel did not object, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Reversal or new trial is warranted only if defendant can establish prejudice, i.e.,

"that the error affected the outcome of the lower court proceedings," the error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks, citations, and brackets omitted). The procedure employed did not affect the outcome of defendant's trial. As defendant cannot establish the necessary prejudice, he is not entitled to relief on this ground.

As explained in *People v Rose*, 289 Mich App 499, 517-518; 808 NW2d 301 (2010):

When determining whether a particular [courtroom] procedure is inherently prejudicial, courts examine whether there is an unacceptable risk that impermissible factors will come into play. [*Holbrook v Flynn*, 475 US 560, 570; 106 S Ct 1340; 89 L Ed 2d 525 (1986)]; see also *Estes v Texas*, 381 US 532, 542-543; 85 S Ct 1628; 14 L Ed 2d 543 (1965) (stating that questions of inherent prejudice arise when "a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process"). One important factor in determining whether a particular practice is inherently prejudicial is whether the practice gives rise primarily to prejudicial inferences or whether it is possible for the jury to make a wider range of inferences from the use of the procedure. *Holbrook*, 475 US at 569 ("While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable."). If a particular procedure is not inherently prejudicial, the defendant bears the burden of showing that the procedure actually prejudiced the trial. *Id.* at 572. However, when the procedure is inherently prejudicial, it will not be upheld if the procedure was not necessary to further an essential state interest.

In *Rose*, a case involving CSC-I perpetrated against the defendant's minor family members, this Court examined whether the use of a "witness screen"—a screen preventing the defendant and the complaining child witness from seeing one another—deprived the defendant of his right to a fair trial by undermining the presumption of innocence. *Rose*, 289 Mich App at 517-522. The *Rose* Court decided that the use of a witness screen was not "inherently prejudicial"; rather, its prejudicial impact was to be assessed on a case-by-case basis. *Id.* at 520-521. In part, the Court reasoned:

Although a juror might conclude that the witness fears the defendant because the defendant actually harmed the witness, a reasonable juror might also conclude that the witness fears to look upon the defendant because the witness is not testifying truthfully. A reasonable juror could also conclude that the screen is being used to calm the witness's general anxiety about testifying rather than out of fear of the defendant in particular. [*Id.* at 520.]

The process employed in this case also was not inherently prejudicial. Assuming that the jurors noticed anything abnormal about the manner in which PD approached the witness stand, it is impossible to know whether they drew any negative inferences about defendant as a result. Notably, the trial court's endorsement of the procedure was not made in the jury's presence.

Although the jurors might have inferred that PD sought to avoid the defense table because she was genuinely afraid of defendant, they might also have believed that she was simply confused about how to approach or went the wrong way by mistake. Also, as with any other credibility judgment, the jurors were able to observe PD's body language and mannerisms in defendant's presence, thereby gauging the genuineness of any fear portrayed. In other words, the jury was free to reject any seeming display of fear if they found it to be contrived or unbelievable. On this record, and particularly in light of the DNA evidence against him, defendant has simply failed to carry his burden of establishing that PD's manner of approaching the witness stand represented outcome-determinative plain error or that counsel's error in failing to object so prejudiced defendant as to warrant a new trial.

## IV. CONSENT INSTRUCTION

Defendant argues that he was denied his due process rights to a fair trial and to present a defense when the trial court failed to give a jury instruction pursuant to M Crim JI 20.27 regarding the affirmative defense of consent to a sexual act. He also challenges defense counsel's failure to request this instruction.

"In the context of the CSC statutes, consent can be utilized as a defense to negate the elements of force or coercion." *People v Waltonen*, 272 Mich App 678, 689-690; 728 NW2d 881 (2006). In this case, however, the prosecution charged defendant with committing CSC during the commission of another felony, kidnapping, pursuant to MCL 750.520b(1)(c). "[R]egardless of whether the penetration was consensual, if it occurs during the commission of another felony, the elements of MCL 750.520b(1)(c) are satisfied." *People v Wilkens*, 267 Mich App 728, 737; 705 NW2d 728 (2005).

It is true that, notwithstanding the inappropriateness of M Crim JI 20.27, consent *was* a valid defense in this case. But it was consent of a different variety. As explained in *Wilkens*, 267 Mich App at 737:

> If consent were a defense to the second element of MCL 750.520b(1)(c), i.e., the underlying felony, then it would be an appropriate defense to the charge under MCL 750.520b(1)(c). For example, because consent is a complete defense to the felony of kidnapping, MCL 750.349, consent is a defense to MCL 750.520b(1)(c) when the underlying felony is kidnapping.

No special instruction was necessary regarding this consent theory (i.e., consent to kidnapping) because it is ingrained within the model jury instruction for the offense of kidnapping, M Crim JI 19.1, and the trial court provided that instruction to the jury almost verbatim. Thus, the jury was properly instructed that PD's consent to any restraint that occurred was an absolute defense to the underlying felony and therefore was also an absolute defense to the CSC-I charge.

Accordingly, in relation to defendant's CSC-I charge, defendant was not entitled to a consent instruction separate from the instruction given in relation to the kidnapping charge. Because "counsel cannot be considered ineffective for failing to raise a futile objection," *Stevens*, 306 Mich App at 628, counsel was not ineffective in failing to seek an instruction under M Crim JI 20.27 with regard to the CSC-I charge.

We acknowledge that defendant was also charged with, and convicted of, CSC-III pursuant to MCL 750.520d(1)(b), and a consent-to-penetration defense could have been used to negate the element of force or coercion for *that* charge. See *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990). Yet, defendant's CSC-III conviction was vacated on double jeopardy grounds, and the prosecution concedes that the trial court erred by using defendant's vacated CSC-III conviction to score prior record variable (PRV) 7. Additionally, the jury was properly instructed that restraint was an essential element of kidnapping—one that is negated by consent—and the jury nevertheless convicted defendant of that charge, implicitly finding a lack of consent. Therefore, even assuming that defense counsel should have sought a consent instruction in regard to CSC-III, defendant cannot establish the necessary prejudice to warrant relief.

V. SENTENCING

Defendant contends that the trial court improperly scored offense variable (OV) 13 at 25 points based on his alleged sexual assault of SG as the prosecution in that matter had yet to result in a conviction. He also challenges the assessment of 20 points for PRV 7 based on his CSC-III charge as the court dismissed that conviction on double jeopardy grounds.

As explained in *People v Steanhouse*, 313 Mich App 1, 38; 880 NW2d 297 (2015), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017), notwithstanding *Lockridge*[3] this Court continues to apply the standard of review enunciated by *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), when reviewing a trial court's scoring of sentencing guidelines variables. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *Id.* at 438. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* The proper interpretation and application of a statute poses a question of law reviewed de novo. *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012).

The prosecution concedes error in the scoring of PRV 7, requiring a reduction in defendant's overall PRV score from 50 to 30 points. Defendant's challenge to the scoring of OV 13 is without merit, however. MCL 777.43(2)(a) provides that the trial court must consider all offenses against a person within a five-year period regardless of whether they resulted in a conviction. See *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). It is therefore irrelevant that defendant's sexual assault of SG had not reached the trial stage.

The reduction in defendant's PRV score reduces his PRV Level from E to D. As a fourth habitual offender falling within OV Level IV, defendant's minimum sentencing guidelines range is thereby reduced from 135 to 450 months to 126 to 420 months. Defendant's minimum sentence of 42 years, 504 months, falls outside the corrected minimum sentencing guidelines range. We are bound therefore to vacate defendant's sentences and remand for resentencing

---

[3] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

based on the amended scoring. See *id.* at 92. Given our resolution of this issue, we need not consider defendant's challenge that his original upwardly departing sentence was unreasonable. He may raise his challenges before the trial court at resentencing.

## VI. FREESTANDING "ACTUAL INNOCENCE" CLAIM

In his Standard 4 brief, defendant argues that we should use this case as an opportunity to announce that the freestanding federal constitutional claim for "actual innocence," which *may* be applicable to death-penalty cases as discussed in *Herrera v Collins*, 506 US 390, 417; 113 S Ct 853; 122 L Ed 2d 203 (1993), is a viable claim for relief in noncapital cases in our state courts. To take advantage of this claim, however, a defendant must demonstrate that he or she is actually innocent. *Id.* Defendant has made no such showing in this case. Indeed, DNA evidence established that he engaged in sexual acts with PD and SG. Both women testified that these acts were nonconsensual. The jury credited PD's testimony. Accordingly, we have no need to consider whether this federal principle should apply to Michigan state law cases.

## VII. MCL 770.1

Finally, defendant contends that "[t]his Court should exercise its discretion pursuant to MCL 770.1 to grant relief to [defendant] in light of the perjured testimony presented" at trial and the "powerful evidence" that defendant "is absolutely innocent of the crime[s] of which he was convicted." MCL 770.1 provides, "The judge of a court in which the trial of an offense is held may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs."

Defendant supports his argument by arguing that this Court may ignore the applicable court rules and treat his request for a new trial under MCL 770.1, which he has raised for the first time on appeal in his Standard 4 brief, as if it were a motion for a new trial properly filed in the trial court. Defendant's argument is misplaced. While recognizing that our court rules provide "a *procedural* framework for post-conviction hearings"—a framework that defendant has not even attempted to follow—he contends that such procedural rules should be ignored here because they do not "supersede" the substantive rule of law set forth by MCL 770.1. (Emphasis added.) Defendant fails to recognize that

> [t]he authority to promulgate rules governing practice and procedure in Michigan courts rests exclusively with our Supreme Court. Const 1963, art 6, § 5; *McDougall v Schanz*, 461 Mich 15, 26; 597 NW2d 148 (1999). Therefore, when resolving a conflict between a statute and a court rule, the court rule prevails if it governs purely procedural matters. [*Donkers v Kovach*, 277 Mich App 366, 373; 745 NW2d 154 (2007).]

Because—as defendant admits—the court rules in question govern the procedural framework for post-conviction relief, MCL 770.1 does not "supersede" them, and this Court is not at liberty to ignore those procedural rules. Hence, we must reject defendant's request for statutory relief.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher