PEOPLE v WILKENS

Docket No. 254668. Submitted August 2, 2005, at Lansing. Decided August 23, 2005, at 9:10 a.m. Leave to appeal sought.

Robert L. Wilkens, Jr., was convicted of two counts of first-degree criminal sexual conduct (CSC-I), one count of producing child sexually abusive material, and one count of eavesdropping following a bench trial in the Washtenaw Circuit Court, Archie C. Brown, J. The defendant was sentenced as a third-offense habitual offender to imprisonment of 35 years and 5 months to 60 years for the CSC-I convictions, 20 to 40 years for the conviction of producing child sexually abusive material, and 2 to 4 years for the eavesdropping conviction. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err by admitting evidence found and seized after a police officer found a camera hidden in a shower used by the defendant's female tenants. The defendant had consented to a search of his home for a gun and knife in a criminal investigation not related to this case. The police officer's search of the shower was within the scope of the defendant's consent. Under the plain view doctrine, the police officer could have seized the suspicious device in the shower without a warrant, but obtained one anyway. The remaining evidence, including a videotape the defendant made of himself engaging in sexual acts with two minors, was seized after the police officer obtained the search warrant.

2. Even if the trial court erred by denying the defendant's request for a polygraph examination, the defendant cannot demonstrate that it is more probable than not that the error was outcome determinative. The defendant did not seek a polygraph examination to prove his innocence, but to support his argument that the seizure of evidence was illegal and the evidence should have been suppressed. Even accepting the statements in the defendant's affidavit as true, however, the facts alleged would not have affected the outcome of the suppression issue. Moreover, for the same reason, the defendant cannot demonstrate ineffective assistance of counsel for counsel's failure to file a motion to suppress the evidence.

3. The trial court properly precluded consent as a defense to the CSC-I charges. The defendant was charged with sexual penetration during the commission of another felony, in this case the production of child sexually abusive material, that is, the videotape. Regardless of whether the sexual penetration was consensual, the elements of MCL 750.520b(1)(c) are satisfied if that penetration occurred during the commission of another felony. The question, then, is whether consent is a defense to the underlying felony. If it is not, then it is not a defense to a charge under MCL 750.520b(1)(c). Consent is not a defense to a charge under MCL 750.145c(2) of producing child sexually abusive material.

4. There was sufficient evidence of sexual penetration to support the defendant's convictions of CSC-I as a principal and as an aider and abettor.

5. The record supports the trial court's scoring of offense variables 4 (serious psychological injury requiring professional treatment), 9 (victim placed in danger of injury or loss of life), 10 (exploitation of vulnerable victim), 11 (number of sexual penetrations), and 13 (continuing pattern of criminal behavior) in connection with sentencing the defendant. With regard to offense variable 4, the evidence, particularly the videotape, supported a finding that both minor victims suffered serious psychological injury. The male victim made violent threats against the female victim and was rendered unable to comprehend the gravity of his actions. The defendant's actions caused the female victim anxiety, altered her demeanor, and caused her to withdraw.

6. No constitutional violation resulted from the female victim's absence at trial. The prosecution did not offer her statements against the defendant at trial. While the defendant asserts that she would have testified favorably for him, the prosecution had no obligation to call such a witness. Moreover, the defendant has failed to explain why he was unable to call the female victim as his own witness.

7. Conviction of both CSC-I and producing child sexually abusive material did not violate double jeopardy. The Legislature intended that those crimes be punished separately.

Affirmed.

COOPER, P.J., concurring in part and dissenting in part, agreed that the defendant's convictions should be affirmed, but would hold that the trial court improperly assessed ten points for offense variable 4 because there was no evidence in the record that the minors, who voluntarily participated in the sexual acts on a casual

basis, suffered serious psychological injuries requiring professional treatment. The case should be remanded for resentencing.

RAPE — CRIMINAL SEXUAL CONDUCT — CHILD SEXUALLY ABUSIVE ACTIVITIES OR MATERIALS — DEFENSES — CONSENT.

Consent to a sexual penetration is not a defense to a charge of first-degree criminal sexual conduct if the sexual penetration occurs during the commission of another felony; if consent is not a defense to the felony underlying the charge of first-degree criminal sexual conduct, it is also not a defense to the charge of first-degree criminal sexual conduct itself; consent is not a defense to a charge of producing child sexually abusive activity or material (MCL 750.145c[2], 750.520b[1][c]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *Mark Kneisel*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jacqueline J. McCann*) and Robert L. Wilkens, Jr., in propria persona for the defendant.

Before: COOPER, P.J. and BANDSTRA and KELLY, JJ.

KELLY, J. Following a bench trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration during the commission of another felony); one count of producing child sexually abusive material, MCL 750.145c(2); and one count of eavesdropping through installation of a camera, MCL 750.539d.[1] The trial court sentenced defendant as a third-offense habitual offender to 35 years and 5 months to 60 years' imprisonment for the CSC-I convictions, 20 to 40 years' imprisonment for producing child sexually abusive material, and 2 to 4 years' imprisonment for eavesdrop-

---

[1] This conviction is not at issue on appeal.

ping, to be served concurrently. Defendant appeals as of right his convictions and sentences. We affirm.

## I. FACTS

In March 2003, Detective Robert Peto and Sergeant Craig Annas of the Ypsilanti Police Department went to defendant's home to investigate criminal allegations unrelated to this case. The officers requested consent to search defendant's home for a gun or knife. Defendant provided written consent to search his home except for rooms rented to tenants. While looking in the shower, Detective Peto observed a homemade device with electrical switches and a motion detector. He thought it was suspicious because it is unusual to have electrical switches and a motion detector in a shower, especially when female tenants used the shower. Detective Peto also saw a "small, approximate quarter-inch hole drilled underneath where the sensor normal—sensor housing normally is." Detective Peto flashed his light on the hole and saw the reflection of glass, which appeared to him to be the lens of a microcamera. Because Detective Peto and Sergeant Annas knew that defendant's tenants used the shower, they arrested defendant for eavesdropping. They also halted their search of the home, and Detective Peto left to obtain a search warrant.

Upon execution of the search warrant, Detective Peto retrieved the camera behind the panel. He found that the wiring from the camera led to recording systems in both defendant's bedroom and the living room. A working remote control for the system was also found in defendant's bedroom. The officers seized video and camera equipment, including a camera from atop defendant's dresser, audio and visual recordings, and sexual toys and photographs.

Detective Peto testified that, during the initial consent search, he and Sergeant Annas found two videotape recordings between the mattresses on defendant's bed. They were not concerned about the videotape recordings at the time. They were not looking for videotapes, and defendant volunteered that they were his personal videotape recordings. When the officers executed the search warrant later that night, however, they seized several other videotapes. On one tape, entitled "Mixed Signals," defendant had recorded himself, a 14-year-old male, and a 16-year-old female engaging in sexual acts.

## II. SEARCH AND SEIZURE

### A. LEGALITY OF SEIZURE

Defendant argues that all the evidence found and seized after Detective Peto used his flashlight to examine the small hole in the shower should have been suppressed because shining the light in that hole, when the object of the search was a gun or knife, exceeded the scope of the consented-to search. We disagree.

> We review a trial court's findings of fact for clear error, giving deference to the trial court's resolution of factual issues. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." We overstep our review function if we substitute our judgment for that of the trial court and make independent findings. However, we review de novo the trial court's ultimate decision on a motion to suppress. [*People v Frohriep,* 247 Mich App 692, 702; 637 NW2d 562 (2001) (citations omitted).]

"Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Jordan,* 187 Mich App 582, 588; 468 NW2d 294 (1991).

The right against unreasonable searches and seizures is guaranteed by both the state and federal constitutions. US Const, Am IV; Const 1963, art 1, § 11. The state constitutional standard is not higher than the federal standard. The constitutions do not forbid all searches and seizures, only unreasonable ones. Reasonableness depends upon the facts and circumstances of each case. The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy. [*Id.* at 586 (citations omitted).]

"The exclusionary rule applies not only to evidence improperly seized during a search without a warrant, but to evidence subsequently seized pursuant to a warrant obtained as a result of an initial illegal search." *Id.* at 588. "Among the recognized exceptions to the warrant requirement are exigent circumstance, consent, and plain view." *Id.* at 587. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion,* 452 Mich 92, 101; 549 NW2d 849 (1996).

The initial search of defendant's home took place under the consent exception. The scope of a consent search is limited by the object of that search. *Florida v Jimeno,* 500 US 248, 251; 111 S Ct 1801; 114 L Ed 2d 297 (1991). Defendant admits that he signed a written consent, which did not specify the object of the search and was not limited in any manner. However, it is undisputed that defendant orally consented to a search for a knife or a gun. Defendant only limited the search area to exclude the private rooms of his tenants. Detective Peto's search of the shower for a gun or knife was clearly within the scope of defendant's consent. Under

the plain view doctrine, Detective Peto could have
seized the device that he discovered in the shower
without benefit of a warrant. Detective Peto was law-
fully searching the shower, the device was in plain view,
it was suspicious, and detective Peto knew that defen-
dant's female tenants used the bathroom. Thus, the
incriminating nature of the device was readily apparent
even though the full nature of the device was unknown
at that time. According to defendant's affidavit, Detec-
tive Peto removed screws from the unit and showed
them to defendant before the search warrant was
obtained. Even assuming that defendant's statements
are true, because detective Peto could have seized the
device given its obvious incriminating nature, viewing
the device with a flashlight and removal of the screws
was also permitted. No other evidence was seized until
after the search warrant was obtained. Therefore, trial
court did not err in admitting the evidence.

### B. REQUEST FOR POLYGRAPH EXAMINATION FOR PURPOSE OF MOTION TO SUPPRESS

Defendant further argues that the trial court erred
when it denied defendant's request for a polygraph
examination, which would have assisted him in proving
that the seizure of evidence was illegal and led to the
suppression of the evidence against him. In addressing
a trial court's denial of a request for a polygraph
examination, our Supreme Court held:

> In cases involving preserved, nonconstitutional error, a
> defendant must demonstrate, " 'after an examination of
> the entire cause,' " that it "is more probable than not that
> the error was outcome determinative." The reviewing
> court must examine the nature of the error and assess its
> effect " 'in light of the weight and strength of the untainted
> evidence.' " [*People v Phillips,* 469 Mich 390, 396-397; 666
> NW2d 657 (2003) (citations omitted).]

Under the circumstances of this case, even if the trial court's denial was error, defendant cannot demonstrate that it is more probable than not that it was outcome determinative. MCL 776.21(5) provides:

A defendant who allegedly has committed a crime under sections 520b to 520e and 520g of Act No. 328 of the Public Acts of 1931 [MCL 750.520b to 750.520e and MCL 750.520g], shall be given a polygraph examination or lie detector test if the defendant requests it.

"The purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial." *People v Phillips,* 251 Mich App 100, 107; 649 NW2d 407 (2002), aff'd 469 Mich 390; 666 NW2d 657 (2003). In this case, however, defendant did not seek a polygraph examination to prove his innocence of the alleged crime. Rather, he sought a polygraph examination to support his argument that the evidence against him should have been suppressed because of an illegal search and seizure. As discussed above, even accepting defendant's affidavit as true, these facts would not have affected the outcome of the suppression issue. Therefore, defendant cannot establish that the trial court's denial of his request for a polygraph examination was outcome determinative.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING SUPPRESSION MOTION

Similarly, defendant cannot show that counsel was ineffective for failing to file a motion to suppress the evidence before trial, which motion would have allowed defendant to put the statements made in his affidavit on the record in the lower court. Because, as discussed above, defendant's testimony would not have been

outcome determinative on this issue, defendant cannot demonstrate ineffective assistance of counsel in this regard. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001).

### III. CONSENT NOT A DEFENSE TO MCL 750.520b(1)(c) IF NOT A DEFENSE TO UNDERLYING FELONY

Defendant next argues that the trial court erred in precluding consent as a defense to the CSC-I charges under MCL 750.520b(1)(c) when the underlying felony was producing child sexually abusive material, MCL 750.145c(2). We disagree. We review de novo claims of instructional error. *People v Hubbard (After Remand),* 217 Mich App 459, 487; 552 NW2d 493 (1996). This issue also involves statutory interpretation. According to the well-established rules of statutory interpretation,

> [w]hen construing a statute, our primary goal is "to ascertain and give effect to the intent of the Legislature." To do so, we begin by examining the language of the statute. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and the statute is enforced as written. Stated differently, "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." [*Phillips, supra,* 469 Mich 395 (citations omitted).]

MCL 750.520b provides, in relevant part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> * * *

(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

According to the plain language of MCL 750.520b(1)(c), the prosecution must prove two elements: (1) a sexual penetration (2) that occurs during the commission of another felony. Accordingly, regardless of whether the penetration was consensual, if it occurs during the commission of another felony, the elements of MCL 750.520b(1)(c) are satisfied. The question then is whether consent is a defense to the "other felony", i.e., the underlying felony. We hold that if consent is not a defense to the underlying felony, then it is not a defense to the CSC-I charge under MCL 750.250b(1)(c).

In this case, the underlying felony was producing child sexually abusive material in violation of MCL 750.145c(2), which provides, in pertinent part, "A person who . . . produces [or] makes . . . any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . ." The statute defines a "child" as "a person who is less than 18 years of age . . . ." MCL 750.145c(1)(b). It is undisputed that consent is not a defense to a charge under MCL 750.145c(2). If consent were a defense to the second element of MCL 750.520b(1)(c), i.e., the underlying felony, then it would be an appropriate defense to the charge under MCL 750.520b(1)(c). For example, because consent is a complete defense to the felony of kidnapping, MCL 750.349, consent is a defense to MCL 750.520b(1)(c) when the underlying felony is kidnapping. *People v Thompson,* 117 Mich App 522, 526; 324 NW2d 22 (1982); *People v LaPorte,* 103 Mich App 444, 448-449; 303 NW2d 222 (1981). But here, because consent is not a defense to the underlying felony, producing child sexually abusive material, defendant cannot argue consent as a defense to

his charges under MCL 750.520b(1)(c). Therefore, the trial court properly excluded consent as a defense.

### IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his conviction of CSC-I in counts I and II. We disagree. "Generally, we review a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Sherman-Huffman,* 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39; 642 NW2d 339 (2002). All conflicts with regard to the evidence must be resolved in favor of the prosecution. *People v Terry,* 224 Mich App 447, 452; 569 NW2d 641 (1997). Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime. *People v Watson,* 245 Mich App 572, 595; 629 NW2d 411 (2001).

### A. COUNT I—CSC-I PENETRATION DURING COMMISSION OF ANOTHER FELONY

The evidence was sufficient to support defendant's conviction of CSC-I with respect to count I, defendant's sexual penetration of the female victim. Defendant asserts that mere touching cannot support his conviction "where penetration is required." However, pursuant to MCL 750.520a(o), " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or *any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.'* " (Emphasis added.) In the "Mixed Signals" videotape, defendant appears to place

his mouth between the female victim's legs on at least one occasion. Further, the male victim testified at trial:

> *Q.* Do you have positive recollection of Mr. Wilkins [sic] touching [the female victim's] vagina with those sex toys or any sex toy?
>
> *A.* Yes.
>
> *Q.* You're positive that that occurred?
>
> *A.* Yes.
>
> *Q.* He used a sex toy and he touched her vagina?
>
> *A.* Yes.

Viewing this evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence to permit a rational trier of fact to find that defendant made an intrusion, however slight, with a body part or object into the genital opening of the female victim's body.

### B. COUNT II—CSC-I AIDING AND ABETTING

There was also sufficient evidence to sustain defendant's conviction with respect to count II of CSC-I as an aider and abettor.

MCL 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

In count II, defendant was charged as follows:

> [The defendant] did aid and abet the sexual penetration of another person, to-wit: cunnilingus, by [the male victim], under circumstances involving the commission of

another felony, to-wit: production of child Sexually Abusive
Material; contrary to MCL 750.520b(1)(c) . . . .

The videotape evidence was sufficient to allow a
rational trier of fact to find beyond a reasonable doubt
that defendant aided or abetted the male victim's
penetration of the female victim, which occurred during
the commission of another felony. Therefore, defen-
dant's conviction under MCL 750.520b(1)(c) as an aider
and abettor is supported by the evidence.

### V. SCORING OF OFFENSE VARIABLES

Defendant next argues that several of the offense
variables were improperly scored. We disagree. "A sen-
tencing court has discretion in determining the number
of points to be scored, provided that evidence of record
adequately supports a particular score." *People v
Hornsby,* 251 Mich App 462, 468; 650 NW2d 700 (2002).
" 'Scoring decisions for which there is any evidence in
support will be upheld.' " *Id.,* quoting *People v Elliott,*
215 Mich App 259, 260; 544 NW2d 748 (1996).

Defendant challenges the scoring of offense vari-
able (OV) 4 for counts I and II (CSC-I). Ten points are
scored for OV 4 if "[s]erious psychological injury
requiring professional treatment occurred to the vic-
tim[.]" MCL 777.34(1)(a). Ten points should be
scored if the "serious psychological injury may re-
quire professional treatment," and the fact that
treatment is not sought is not conclusive when scor-
ing the variable. MCL 777.34(2).

With regard to the male victim, the videotape reveals
that his attitude took a disturbing turn during the
course of the 41-minute incident. Toward the end, he
resorted to making violent threats against the female
victim to coerce her into continuing the sex acts. This,

in light of the fact that the male victim's demeanor on the stand was rather casual, indicates that the male victim suffered serious psychological injury as a result of this incident such that he was rendered unable to comprehend the gravity of his actions. This supports the trial court's scoring of OV 4.

With regard to the female victim, the trial court relied on statements that she made "on the videotape and everything else." Though the female victim did not testify, the videotape shows that the female victim repeatedly indicated that she did not want to continue the sex acts and that the "motion lotion" was hurting her, yet defendant asserted that the videotape was not worth the money he spent on the female victim's clothes and urged the female victim to continue. Ultimately, the female victim sat up in bed and remained silent while defendant attempted to coax her into continuing. This evidence indicates that defendant's actions caused the female victim anxiety, altered her demeanor, and caused her to withdraw; it supports a finding of serious psychological injury occurring to the female victim.

With respect to OV 9, MCL 777.39(1)(c), ten points are scored if there are two to nine victims. Each person "who was placed in danger of injury or loss of life as a victim" is counted when scoring the offense variable. MCL 777.39(2)(a). In this case, both the male victim and the female victim were placed in danger of injury by defendant's conduct. During the making of the videotape, the male victim threatened the female victim with physical harm. Additionally, at defendant's suggestion, the male victim used "motion lotion," which the female victim complained burned her. Thus, she was placed in physical danger. Also, the female victim and the male victim, both minors, were placed in danger of physical

injury from having drunk a large quantity of alcohol provided by defendant. The record supports the scoring of OV 9.

Offense variable 10, MCL 777.40, was also properly scored at ten points for counts I and II. OV 10 relates to the exploitation of a vulnerable victim and is scored at ten points if the offender "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" MCL 777.40(1)(b). The word "exploit" means "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). The word "vulnerability" means "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The female victim, a 16-year-old with a history of running away from her adoptive parents, stayed in defendant's house for a period. On the night in question, defendant provided her with alcohol and purchased clothes and food for her. The "Mixed Signals" videotape was then made so that the female victim could pay defendant back for the clothes. The record supports that defendant "exploited" the victim's youth by manipulating her with clothes and alcohol in exchange for making the sexually abusive videotape.

OV 11, MCL 777.41, was also properly scored for counts I and II. OV 11 provides that 25 points should be scored if one sexual penetration occurred. MCL 777.41(1)(b). The statute further provides:

All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 and 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense. [MCL 777.41(2).]

The statute instructs that only penetrations of the victim arising out of the sentencing offense are scored, but the one penetration that forms the basis of the sentencing offense is excluded. *People v McLaughlin*, 258 Mich App 635, 674-677; 672 NW2d 860 (2003). The phrase "arising out of the sentencing offense" refers to all penetrations arising out of the entire assault. *Id.* at 674. In count I, defendant was sentenced for his penetration of the victim. But the evidence demonstrates that defendant penetrated the female victim with both his mouth and a sex toy. The evidence supports the score of 25 points for OV 11 for count I because defendant was charged with only one penetration, yet he penetrated the female victim more than once during the making of the videotape. Similarly, in scoring count II, defendant was sentenced as an aider and abettor to the male victim's penetration of the female victim. The evidence demonstrates that, in addition to aiding and abetting the male victim's penetrations of the female victim, defendant also penetrated the female victim at least one other time. Thus, the evidence supports scoring 25 points for OV 11 for count II. There was no error in the scoring of this offense variable.

There was also no error in the scoring of OV 13. Twenty-five points are scored for OV 13 where the offense is part of a pattern of felonious criminal activity involving three or more crimes against a person. MCL 777.43(1)(b). In scoring OV 13, all crimes within a five-year period are counted, including the sentencing offense, regardless of whether the offenses resulted in a conviction. MCL 777.43(2)(a). In this case, defendant was convicted of two counts of CSC-I and one count of

eavesdropping for videotaping a female tenant in the shower. Further, at the time of his sentencing, defendant had two additional counts of CSC-I pending. Clearly, there was evidence in the record to support the scoring of 25 points for OV 13.

### VI. FAILURE TO PRODUCE THE FEMALE VICTIM AS WITNESS

Defendant next argues that his right to confront and cross-examine the female victim and his right to due process were violated because she was not produced as a witness against him. Although defendant states that he had the right to confront a witness "against him," defendant is not claiming that evidence of the female victim's out-of-court statements should have been excluded because the female victim did not appear at trial. Further, defendant, while using the phrase "against him," actually argues that the prosecution should have been required to present the female victim as a witness because she would have been helpful to his defense.

In a case in which the defendant raised a similar issue, *People v Lee,* 212 Mich App 228, 257-258; 537 NW2d 233 (1995), the defendant argued that the prosecution denied him the right to confront witnesses because some witnesses were not called to testify. This Court, noting that the defendant was able call these witnesses on his own, found no violation of the defendant's right of confrontation or due process because "[w]hile the prosecutor has certain obligations with respect to witnesses, it is not the prosecutor's responsibility to call any witnesses whom the defendant believes may support his defense in some way." *Id.* Here, the prosecution did not offer the female victim's statements against defendant at trial. On appeal, defendant argues that if she had testified, she would have testified favorably for defendant. Thus, as in *Lee,* the prosecu-

tion had no obligation to call a witness that defendant believed would be favorable to him, and defendant has failed to explain why he was unable to call the female victim as his own witness. We discern no constitutional violation arising from the female victim's absence at trial.[2]

### VII. DOUBLE JEOPARDY

Defendant next argues that his guaranteed constitutional protection against double jeopardy was violated when he was convicted of CSC-I, MCL 750.520b(1)(c); and production of child sexually abusive material, MCL 750.145c(2). This challenge presents a question of law that we review de novo. *People v Lett,* 466 Mich 206, 212; 644 NW2d 743 (2002). This issue was previously resolved in *People v Ward,* 206 Mich App 38, 43; 520 NW2d 363 (1994), in which this Court held:

> Because the Legislature intended to punish conduct violative of distinct social norms and did not authorize punishments based on a continuum of culpability, it is apparent that the Legislature intended that the crimes of criminal sexual conduct and child sexually abusive activity be punished separately. Accordingly, we hold that defendant's convictions do not violate the double jeopardy protection against multiple punishments. [Citation omitted.]

Following *Ward,* we conclude that defendant's claim has no merit.

Affirmed.

BANDSTRA, J., concurred.

---

[2] Defendant also argues that his appellate counsel was ineffective for not raising this issue in his "primary" brief on appeal. However, defendant raised the issue himself, and we have addressed it. Therefore, defendant cannot demonstrate any prejudice in appellate counsel's failure to raise the issue.

COOPER, P.J. (*concurring in part and dissenting in part*). I agree with the majority's determination to affirm defendant's convictions. However, I would find that the trial court improperly assessed ten points for Offense Variable (OV) 4, as there was no evidence anywhere in the record to support this score.[1] I would, therefore, remand for resentencing.

I agree that the facts in this case are very disturbing. However, we, as judges of this Court, cannot substitute our personal belief systems for the facts on record. There was no evidence that either of the participants in the videotape suffered a serious psychological injury requiring professional treatment. They voluntarily participated in these sexual acts on a casual basis. In fact, there is evidence that the female victim felt that the prosecution of defendant was unfounded.[2] The prosecution presented no testimony from a psychologist or any other mental health professional, nor was there any psychological information reflected in the presentencing investigation report. While these individuals are not paragons of virtue, we cannot impose our own standards of morality upon the participants and presume that they suffered serious psychological injury requiring professional treatment, as contemplated by the statute.[3]

---

[1] *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

[2] During a taped interview with defense counsel's detective, which was played at trial, the victim stated that defendant had done nothing wrong and that she voluntarily participated in the sexual acts depicted in the videotape.

[3] MCL 777.34.