# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM ROBERT SMITH,

        Defendant-Appellant.

UNPUBLISHED
May 24, 2018

No. 338347
Grand Traverse Circuit Court
LC No. 17-012597-FC

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(f), and three counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b). The trial court sentenced defendant to 7 to 30 years in prison for the CSC-I conviction and 7 to 15 years in prison for each CSC-III conviction, to be served concurrently. We affirm.

Defendant and the victim knew each other through the victim's fiancé. After the victim's fiancé was sentenced to prison, the victim frequently went to defendant's house to discuss her problems and to consume alcohol. In November 2016, the 24-year-old victim was drinking alcohol at defendant's home and fell asleep. The victim testified that she later awoke to find that her pants and underwear had been pulled down past her thighs and defendant was behind her with his fingers inside her vagina. She repeatedly told defendant to stop and tried to get away, but defendant then got on top of her and forced his penis inside her vagina. She briefly pulled away but defendant threw her on the bed, placed his knees on her shoulders, and forced his penis into her mouth. Later, defendant began "fingering" the victim's vagina "really aggressively" and performing cunnilingus, after which he again forced her to perform fellatio. According to the victim, defendant had previously "fingered" her during a past visit. She protested and made defendant stop. Thereafter, she told defendant that they were just friends, and she established rules that there was to be no touching, no flirting, and no sexual contact whatsoever.

The defense theory at trial was that the sexual encounter was consensual. The jury convicted defendant of CSC-I based on defendant's act of digital penetration, and three counts of CSC-III for the acts of penile-vaginal penetration, fellatio, and cunnilingus.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence of personal injury to support his CSC-I conviction. We disagree. A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

Defendant was convicted of violating MCL 750.520b(1)(f), which provides:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes, but is not limited to, any of the following circumstances:

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

"Thus, an actor may be found guilty under MCL 750.520b(1)(f) if the actor (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). Under MCL 750.520a(n), " 'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." Thus, if the evidence is sufficient to show either bodily injury or mental anguish, then the evidence is sufficient to establish the element of personal injury.

In *People v Patrella*, 424 Mich 221, 257; 380 NW2d 11 (1985), our Supreme Court defined "mental anguish" as "extreme or excruciating pain, distress, or suffering of the mind." The Court provided a list of factors to consider in determining whether mental anguish was established:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
>
> (2) The need by the victim for psychiatric or psychological care or treatment.
>
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
>
> (4) Fear for the victim's life or safety, or that of those near to her.
>
> (5) Feelings of anger and humiliation by the victim.
>
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
>
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
>
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
>
> (9) The fact that the assailant was the victim's natural father. [*Id.* at 270-271.]

The victim testified that she previously suffered from post-traumatic stress disorder (PTSD), which was again triggered by defendant's sexual assault. After the assault, she experienced panic attacks and anxiety attacks. She also had trouble focusing, concentrating, and difficulty sleeping. In addition, she previously struggled with an eating disorder, which had been in remission before the assault but returned after the assault. According to the victim's mother, after defendant's sexual assault, the victim's condition worsened "[b]ig time." Her anxiety increased and she was "scared of her own shadow." In addition, the victim's eating disorder "went off the deep end," she "barely sleeps," and she had panic attacks. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational jury to find beyond a reasonable doubt that defendant's conduct caused the victim mental anguish.

Defendant argues that because the victim had experienced many of her problems before the assault, any mental anguish she suffered was not caused by him. He also suggests that because of the victim's past difficulties, her issues with anxiety, alcohol, and body image "would have been worse" if she had not spent time with him. It is well-established, however, that a defendant takes a victim as he finds her. *People v Brown*, 197 Mich App 448, 451; 495 NW2d 812 (1992). The testimony of the victim and her mother was sufficient to establish a causal link between defendant's sexual assault and the victim's mental anguish. In addition, regardless of

the relative benefits that defendant's past friendship and relationship may have brought to the victim, there was sufficient evidence that defendant sexually assaulted the victim, and that the assault exacerbated the victim's problems to cause her mental anguish.

The evidence was also sufficient to establish the personal injury element on the basis of bodily injury to the victim. "[P]hysical injuries for this purpose need not be permanent or substantial." *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000). After defendant's sexual assault, the victim went to the bathroom, which "really hurt." She experienced burning and bleeding. She thought that she might be having her period, so she used a tampon, but she still felt "really sore." When the victim visited a sexual assault nurse-examiner (SANE) later that day, the SANE nurse observed two abrasions on the victim's labia minora, which were consistent with a fingernail scratching away a superficial layer of the skin. According to the victim, the pain lasted a "couple days." She also experienced soreness in her jaw, pelvic area, and on the tops of her thighs. From this evidence, a rational jury could conclude that the victim suffered personal injury. Although defendant points to alternative plausible explanations for the cause of the victim's abrasions, or posits that they could have resulted from consensual sex, these were questions of fact for the jury to resolve. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *Wilkens*, 267 Mich App at 738.

Defendant also briefly suggests, without advancing a meaningful argument, that his acts were consensual. Given the victim's testimony that she repeatedly told defendant to stop, that defendant covered her mouth so that she could no longer object, and that defendant held her down when she tried to get away, a rational jury could find beyond a reasonable doubt that the acts were not consensual, and instead were accomplished by force or coercion. Although defendant testified that the victim begged him to make love to her, the credibility of defendant's testimony was within the exclusive province of the jury and will not be second-guessed by this Court. *Gadomski*, 232 Mich App at 28. Again, "[a]ll conflicts with regard to the evidence must be resolved in favor of the prosecution." *Wilkens*, 267 Mich App at 738.

In sum, sufficient evidence supports defendant's conviction of CSC-I.

## II. CSC-III SENTENCES

Defendant argues that his sentences of 7 to 15 years for his CSC-III convictions are outside the sentencing guidelines range for those convictions, and therefore constitute disproportionate departures requiring resentencing. We disagree.

The trial court ordered the CSC-III sentences to be served concurrently with defendant's sentence for CSC-I. CSC-III, as a Class B offense, is in a lower crime class offense than CSC-I, a Class A offense. MCL 777.16y. Moreover, defendant's sentences for CSC-III are within the statutory maximum for CSC-III. MCL 750.520d(2). In this type of sentencing scenario, the guidelines for CSC-III are subsumed by the guidelines for CSC-I, meaning that the guidelines for CSC-III need not be scored. And, defendant's sentences for CSC-III are not departure sentences. See *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014). Because defendant is subject to a more severe concurrent sentence for CSC-I, any arguments relating to defendant's

sentences for CSC-III cannot have any practical legal effect and are moot. Defendant is not entitled to resentencing on this basis.

### III. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the trial court erred in scoring offense variable (OV) 3 and OV 10 of the sentencing guidelines. In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court clarified both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by this Court, stating:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. (citations omitted).

In this case, however, defendant did not object to the scoring of either OV 3 or OV 10 at sentencing. Therefore, his claims are unpreserved and our review is limited to plain error affecting his substantial rights. *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

### A. OV 3

Ten points may be assessed for OV 3 if bodily injury requiring medical treatment occurred to a victim. MCL 777.33(1)(d). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). " '[R]equiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

The victim testified that she experienced pain and bleeding as a result of the sexual assault, and the SANE nurse observed two abrasions on the labia minora. This evidence supports a finding that the victim suffered a bodily injury. Accordingly, there was no plain error in this regard. Defendant argues, however, that the victim did not require medical treatment for her injury, as is necessary to score 10 points for OV 3. He argues that she received medical attention from the SANE nurse only for investigative purposes. Although the police sent the victim to the SANE nurse, the investigation was not the sole purpose for the examination. The SANE nurse testified that she performs a comprehensive medical examination at the same time as collecting forensic evidence so that a patient only needs one examination. Although the nurse agreed that the victim's abrasions would heal quickly without medical treatment, she also gave the victim antiviral medications to prevent disease. Thus, the evidence supports that the

examination was, in part, for medical treatment. Accordingly, there was no plain error in scoring OV 3 at 10 points.[1]

## B. OV 10

A trial court is directed to score 10 points for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). In *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008), our Supreme Court explained that "the central subject [of MCL 777.40] is the assessment of points for the exploitation of vulnerable victims." Vulnerability is defined in the statute to be a "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The Court in *Cannon* explained factors to consider when deciding whether a victim is vulnerable:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Cannon*, 481 Mich at 158-159.]

In this case, defendant was approximately twice the victim's age. The victim testified that she felt safe with defendant because he was older. Defendant knew that the victim suffered from anxiety, alcoholism, and had been victimized in the past. By visiting with her frequently and reaching out to her after her fiancé went to prison, defendant became the victim's confidante when she felt like she had no other outlets to discuss her problems. Because the victim's mother did not allow her to drink alcohol in their home, defendant repeatedly welcomed the victim into his home to drink; she would drink alcohol in his bedroom — on his bed — until she passed out. On the night of the offenses, the victim was stressed because of a scheduled court appearance the next day and defendant again urged her to come over to drink alcohol. After she did, she fell asleep on his bed, making her vulnerable. Defendant exploited that vulnerability by sexually assaulting her. All of this evidence supports a finding that defendant not only exploited the victim's age difference, but also her addiction to alcohol. Indeed, although defendant did not object to the scoring of OV 10 at sentencing, when imposing sentence, the trial court recognized that the defendant's conduct involved the exploitation of a vulnerable victim.

---

[1] Even if the victim's bodily injury did not necessitate medical treatment, her bodily injury alone would have justified a score of five points for OV 3 ("[b]odily injury not requiring medical treatment occurred to a victim"). MCL 777.33(1)(e). A five-point adjustment would reduce defendant's total OV score from 30 to 25 points, but this does not affect his placement in OV level II (20-39 points) in the class A sentencing grid. MCL 777.62. Therefore, any error would not have affected defendant's sentencing guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

The court stated that "what [defendant] did was a deliberate, calculated, sinister series of acts that showed a callous disregard for this victim half his age" and that defendant showed a "disregard for her know[n] vulnerability." Thus, there was no plain error in scoring OV 10 at 10 points.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra