*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 14, 2023

Plaintiff-Appellee,

v

No. 364492
Montcalm Circuit Court
LC No. 2017-023520-FC

JOSEPH JOHN UTURO,

Defendant-Appellant.

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct with a child who was at least 13 but less than 16 and related to the defendant (CSC-I), MCL 750.520b(1)(b); and second-degree criminal sexual conduct with a person under 13 years of age while defendant was 17 years of age or older (CSC-II), MCL 750.520c(2)(b).[1] In November 2018, the trial court initially sentenced defendant to 17 to 50 years in prison for the CSC-I and 10 to 15 years in prison for the CSC-II convictions. Defendant appealed his convictions in 2019 and this Court affirmed the convictions in 2020.[2]

In 2022, defendant moved for relief from judgment, MCR 6.500 *et. seq.*, and the trial court granted resentencing only regarding the trial court's original decision to score Offense Variable (OV) 13 at 50 points. At the November 2022 resentencing hearing, the trial court scored OV 13 at 25 points because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.22(1)(c). Under the new guidelines, the trial court resentenced defendant to serve 15 to 50 years' imprisonment for the CSC-I conviction and to serve

---

[1] Defendant was acquitted of one count of CSC-I with a person under 13 years of age while the defendant was 17 years of age or older, MCL 750.520b(2)(b).

[2] *People v Uturo*, unpublished per curiam opinion of the Court of Appeals, issued August 27, 2020 (Docket No. 347311). The Michigan Supreme Court denied defendant's application for leave to appeal. *People v Uturo*, 507 Mich 905 (2021).

71 months to 15 years' imprisonment for the CSC-II conviction. Defendant now appeals by right arguing that because the trial court erroneously assessed 25 points for Offense Variable (OV) 13, defendant's sentence was unreasonable and inappropriate, and that, therefore, he is entitled to resentencing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's sexual assault of his minor daughter. Between 2012 and 2017, the victim lived with defendant, and she testified that they were always moving around to different homes during this period.

The victim's first memory of defendant's sexual assault was in October 2013 when she was nine years old and living with defendant in Montcalm County, Michigan. One day, the victim came home from school, and defendant took her downstairs to the basement. Defendant touched the victim on her vaginal area and breasts over her clothing. The victim testified that defendant became "aggressive," tried to take off her shirt and pants, and pinned her down to the bed when she told him to stop. She kicked him off and ran back upstairs. Immediately after, she went to the bathroom and noticed vaginal bleeding. The victim testified that she assumed that the bleeding was from a cut in her vaginal area caused by defendant's aggressive touching over her clothes. She agreed that there was a possibility that she was not remembering every detail of the incident that day because she had "blocked some things out." The victim did not tell anyone what happened that day because she trusted defendant and thought that his behavior might be normal. However, she testified that defendant's behavior made her uncomfortable and that defendant told her to keep it a secret.

The victim testified that defendant sexually assaulted her at different times between 2013 and 2017. She testified that she and defendant would "bounce around" between a home on Taft Street in Wyoming, Michigan; Whiting's trailer in Sparta, Michigan; and her grandmother and grandfather's trailer in Montcalm County, Michigan. In the home on Taft, she and defendant were sometimes living alone, and at other times, they were living with up to 15 people. The victim testified that when they were alone at the home on Taft, defendant raped her three times on separate occasions and that "rape" meant that defendant put his penis inside her vagina. She testified that defendant raped her once in Whiting's trailer and she used the same definition for the word "rape" on that occasion. The victim testified that one night at her grandparents' home, while she was sleeping in the camper that was parked behind her grandparents' trailer, defendant came inside and put his penis inside her vagina. She kicked and punched him, and then she ran outside and into her grandparents' trailer. She testified that she was sleeping in the camper rather than the trailer because her grandparents were intoxicated and loud that night. On direct examination, defendant testified, "I've never came home and found my daughter in my camper, ever."

In 2017, shortly after the incident in Montcalm County, the victim went to live with her mother and confided in her about defendant's assaults. Her mother called the police the next day, and an officer asked the victim to make a phone call to defendant as part of the police investigation. During this call, the victim lied to defendant, telling him that she had missed her menstrual period for two months "to try to get him to admit what he did," insinuating that she was pregnant and that defendant was the father. In response, defendant said that his "heart [was] sinking" and that he

had "nothing but regret, regret, regret." The recorded phone call was played for the jury.[3] On direct examination at trial, when asked whether defendant had sexual relations with the victim, defendant said he never touched the victim inappropriately and that his "regret" was the fact that he was working all the time and moving around when the victim was growing up.

Defendant testified that during the phone call, his first thoughts were: "[she] has a tendency of saying outlandish things. I blew it off. I knew something wasn't right, so I wanted to talk to her face-to-face later on." Defendant explained in his testimony that his regrets were that he was working all the time and that he moved the victim "from place to place to place." According to defendant, his responses were unrelated to any sexual relations with the victim. On direct examination, when asked whether defendant had sexual relations with the victim, defendant responded, "I can't admit to something I didn't do." Defendant maintained throughout his trial testimony that he never inappropriately touched the victim.

The jury acquitted defendant of CSC-I (person under 13) but convicted him of CSC-I (relationship) and CSC-II (person under 13).

Defendant's initial sentencing hearing was held in November 2018, and defendant was sentenced to serve 17 to 50 years' imprisonment on the CSC-I conviction and 10 to 15 years' imprisonment on the CSC-II conviction. This Court affirmed defendant's convictions on direct appeal. Subsequently, defendant filed for relief from judgment, see MCR 6.500, and the trial court granted resentencing only regarding the OV 13 scoring of 50 points.

At defendant's resentencing hearing in November 2022, the prosecution argued that OV 13 should be assessed 25 points instead of 50 points because the jury acquitted defendant of the first CSC-I charge premised on the victim being under 13 years old. See MCL 777.43(1)(a). Defendant argued that OV 13 should be assessed at zero points, however, because MCL 777.43(2)(a) required three or more crimes against a person within a five-year period, and the victim had testified about "just generalities" when the sexual assaults occurred, she gave "no specifics," and the victim "changed her story multiple times." The prosecution argued that the victim's testimony that she was sexually assaulted for years fulfilled the "three or more crimes" requirement and asked the trial court to sentence defendant to the maximum of the sentencing guidelines range. The trial court agreed with the prosecution's argument, stating that "[b]ased upon having been the trial judge, and recalling [the victim's] testimony, this was something that happened very, very regularly when [defendant] was not in a relationship."

The trial court ultimately resentenced defendant to 15 to 50 years' imprisonment on the CSC-I conviction and 71 months to 15 years' imprisonment on the CSC-II conviction on the high end of, but within the guidelines. The trial court reasoned that the victim was "incredibly believable" and that there was no question that the sexual assault "happened on multiple occasions," and therefore, the assessment of OV 13 at 25 points was appropriate.

---

[3] The first trial resulted in a mistrial after the "unredacted" phone call, including the victim's statements to the detective, was mistakenly played for the jury.

Defendant now appeals.

## II. ANALYSIS

Defendant argues that the trial court erred by assessing OV 13 at 25 points on the basis of acquitted conduct. We disagree.

The trial court's factual determinations regarding the OVs must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). We review the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

Although the sentencing guidelines are advisory, trial courts must still consider the guidelines when imposing a sentence. *People v Lockridge*, 498 Mich 358, 365, 391-392; 870 NW2d 502 (2015). When a trial court imposes a sentence that falls within the minimum sentencing guidelines range, that sentence is presumed to be proportionate because it is within the sentencing norm for that offense class. See *People v Posey*, ___ Mich ___, ___; ___NW2d___ (2023) (Docket No. 162373); slip op at 35. We must still review the sentence for reasonableness by determining "whether the trial court abused its discretion by violating the 'principle of proportionality' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). If the trial court sentenced defendant on the basis of a scoring error that altered the minimum sentencing guidelines range, defendant is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006).

OV 13 of the sentencing guidelines applies to the offense categories of crimes against a person. MCL 777.22(1). The guidelines for assessing OV 13 state, in pertinent part, as follows:

> (1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) The offense was part of a pattern of felonious criminal activity involving *3 or more sexual penetrations* against a person or persons *less than 13 years of age* ................................................................................................... 50 points

> \* \* \*

> (c) The offense was part of a pattern of felonious criminal activity involving *3 or more crimes* against a person ............................................................ 25 points

> \* \* \*

(g) No pattern of felonious criminal activity existed ..................................
0 points.  [MCL 777.43 (emphasis added).]

Additionally, MCL 777.43(2)(a) states that "all crimes within a 5-year period, including the sentencing offense, shall be counted *regardless* of whether the offense resulted in a conviction." (Emphasis added.)  In other words, uncharged conduct may be considered.  Charges that were previously dismissed may also be considered if there is a preponderance of the evidence supporting the charge.  *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013).

Charges that were previously acquitted *cannot* be considered, however.  In *People v Beck*, 504 Mich 605, 608-609; 939 NW2d 213 (2019), the Supreme Court considered whether "[o]nce a jury acquits a defendant of a given crime, may the judge, notwithstanding that acquittal, take the same alleged crime into consideration when sentencing the defendant for *another* crime of which the defendant was convicted?"  The Court held that the answer is no.  *Id*. at 609.  "Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime."  *Id*.  The Court's reasoning was that unlike dismissed charges or uncharged conduct, once a defendant is acquitted of a crime, the defendant is presumed innocent of that crime, and "conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process."  *Id*. at 626-627.

Defendant argues that the trial court improperly assessed OV 13 at 25 points.  Defendant's argument is premised on the fact that defendant was acquitted of the first CSC-I charge premised on the victim being under 13 years old at the time of the sexual assaults, and therefore, the trial court's conclusion that defendant committed three or more crimes within a five-year period was based on acquitted conduct and violated his due-process rights.  See MCL 777.43(1)(c); MCL 777.43(2)(a); see also *Beck*, 504 Mich at 609.  We disagree.

The prosecution argues that the trial court properly assessed OV 13 at 25 points on the basis of uncharged conduct that occurred in Kent County, referring to the victim's testimony at trial about four separate incidents of sexual assault between 2013 and 2017.  The prosecution distinguished between these incidents and the incidents that occurred in Montcalm County in 2013 and 2017, arguing that the jury only acquitted defendant for the conduct in Montcalm County in 2013,[4] and because defendant was convicted of one count of CSC-I and one count of CSC-II, the trial court only needed to find that defendant sexually assaulted the victim at least one additional time between 2013 and 2017 in order to assess OV 13 at 25 points.  The scoring guidelines for OV 13 explicitly state that "all crimes within a 5-year period, including the sentencing offense, shall be counted *regardless* of whether the offense resulted in a conviction."  MCL 777.43(2)(a) (emphasis added).  Therefore, the prosecution concludes that the trial court's sentencing was not based on acquitted conduct, but rather uncharged conduct that was supported by a preponderance of evidence.  We agree and find this argument persuasive.

---

[4] In the prosecution's opening statements to the jury, the jury was told that the Montcalm County incidents were the only ones charged for the purpose of trial but that the abuse continued throughout 2013 to 2017, per the amended felony information, and the defendant and the victim also lived in Kent County during those years.

During resentencing, the trial court stated that the victim's testimony about the regular occurrence of sexual assault between 2013 and 2017 led the trial court to believe that the assault "happened on multiple occasions." According to the court, "There's no question in my mind that this happened on multiple occasions." The evidence at trial supports this conclusion.

The victim testified to an October 2013 incident in Howard City where defendant pinned her on his bed, attempted to remove her clothing, and was touching her chest and vaginal area over her clothes; she was only 9 years old at the time—likely in third or fourth grade. After identifying that they moved from Howard City in Montcalm County to Taft Street in Kent County, the victim testified as follows:

A: I know on Taft, he raped me three times.

Q: What does that mean, when you say, "He raped me"?

A: He pinned me to the bed, he put his penis inside my vaginal area, and he did that, like, alot. And then he would tell- me to keep it a secret, that it never happened, and that it won't happen again, but it always happened again.

Q: And when he did that to you, at least on Taft, was that when other people were living with you, or is that when you guys were just there by yourselves?

A; Anytime we were alone.

She also testified that defendant raped her and sexually touched her once in Sparta because "I got in trouble and he told me that was the punishment." And just before the victim returned to living with her mother in 2017, she described the incident when she was sleeping in the camper behind her grandparents' trailer in Howard City. Because it was hot out, she was sleeping with shorts and a tank top on and woke up as defendant inserted his penis into her vagina; she kicked and hit him with her hands to get him off her and then ran into her grandparents' trailer. There insufficient testimony in the record to determine that sexual conduct occurred multiple times before and after the victim turned 13 years old. During resentencing, the prosecution stated, "the victim in this case testified that she was sexually abused, sexually penetrated, two to three times a week, for years." In response, the trial court stated, "I do agree . . . this was something that happened very, very regularly . . . ."

The jury acquitted defendant of CSC-I for sexual penetration of the victim when she was under 13 years old. Therefore, the jury determined that the prosecution failed to prove beyond a reasonable doubt that either (1) defendant sexually penetrated the victim when she was under 13, or (2) the victim was not under 13 years of age when the sexual penetration occurred. See MCL 750.520b(2)(b). But this does not preclude the trial court from considering uncharged sexual conduct that occurred outside of Montcalm County. MCL 777.43(2)(a); *People v Wilkens*, 267 Mich App 728, 743-744; 705 NW2d 728 (2005). There is no evidence that the trial court considered this acquitted conduct in finding "3 or more crimes against a person" under MCL 777.43(1)(c). The evidence at trial established that defendant sexually penetrated his daughter repeatedly over a number of years; merely because defendant was only charged with the sexual assaults that occurred in Montcalm County—and not with those events that occurred in Kent County—does not oblige the trial court to ignore the victim's testimony regarding years of sexual

abuse.  Both the CSC-I (relationship) and CSC-II (victim under 13) were crimes against the victim, and her testimony regarding defendant's sexual abuse of her in Kent County can be considered for purposes of OV 13.  Accordingly, the trial court properly scored OV 13 at 25 points, it amended its sentence, and justified the basis for its decision clearly on the record.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood